## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HERBERT TRUHE,

    Plaintiff,

    v.

EAST PENN TOWNSHIP, et al.,

    Defendants.

CIVIL ACTION NO. 3:05-CV-1253

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is Defendants East Penn Township ("Township"), Board of Supervisors of East Penn Township ("Township Supervisors"), Guy Barry and Todd Deem's (collectively "Defendants") Motion for Summary Judgment (Doc. 19) as to Plaintiff Herbert Truhe's Complaint (Doc. 1).  For the reasons set forth below, Defendants' motion will be granted as to Counts I, II, IV, V, VI and VII of Plaintiff's Complaint.  The Court has jurisdiction over these counts pursuant to 28 U.S.C. § 1331.  The Court will decline to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Count III of Plaintiff's Complaint, and will dismiss this claim without prejudice.

### BACKGROUND

The facts presented in the summary judgment record are as follows.  Plaintiff was appointed Chief of Police for East Penn Township by the Board of Supervisors in 2001. (Def.'s Statement of Material Facts "SMF" ¶ 2, Doc. 20.)  Plaintiff received a salary of nine dollars ($9.00) an hour at the time of his appointment. (Def.'s SMF ¶ 3.) Periodically, Plaintiff would receive raises during his employment as Chief of Police, eventually earning a salary of thirteen dollars and sixty cents ($13.60) per hour as of May

23, 2005, Plaintiff's last day of work. (Def.'s SMF ¶¶ 4-5; Plaintiff's Counter-Statement of Material Facts "CSMF" ¶ 5.)  When Plaintiff was appointed Chief of Police, the Township employed one other police officer. (Truhe Dep. 16:8-25, Sept. 8, 2006.)  However, shortly after Plaintiff began as Chief of Police, the other officer resigned. (*Id.*)  From that point until Plaintiff's termination, he was the only police officer in the Township. (*Id.*)

During the Spring of 2005, the Township was undertaking to expand its police force into a full-fledged police department. (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 6, 2006, Doc. 33-2 p. 67-69.) To that end, on May 2, 2005, the Board of Supervisors adopted a new set of policies and procedures by which the police department was to run. (*Id.*; *see also* Doc. 33-2 pp. 40-66.)  On May 6, 2005, William G. Schwab, a Township Supervisor and Police Liaison Supervisor wrote a letter to Plaintiff informing him of the new policies and that these policies would take effect immediately. (*Id.*)  These policies covered disciplinary matters, such as prescribing the punishment for insubordination, neglect of duty, and conduct unbecoming an officer. (Article III, sections 300, 500 and 600, Doc. 33-2 pp. 44-47.) These policies also detailed particular tasks and procedures, including, inter alia, the following which are relevant to the present case: (1) Plaintiff was no longer allowed to use the Township police cruiser to commute from home to work and back, but, rather, the cruiser was to be left at the Township Building (Article X, subsection 4, Doc. 33-2 p. 65); (2) Plaintiff was required to dress in the "summer uniform" prescribed – that is, a short sleeve shirt with a black tie and police nameplate (Article V, section 505, subsection 3, Doc. 33-2 pp. 57-58); and (3) Plaintiff was required to patrol the entire Township on every shift and to log the roads driven, the mileage, and number of gallons of gasoline used

(Article III, section 600, subsection 10, Doc. 33-2 p. 49; Article X, subsections 1, 2 and 4, Doc. 33-2 pp. 64-65).

As a result of the letter, dated May 6, 2005, on May 9, 2005, Plaintiff and Schwab engaged in an argument in which Plaintiff yelled at Schwab, stated that the new policies were "bullshit" and that he "would do whatever [he] wanted to do," and asked Schwab whether he was trying "to stir up trouble." (Truhe Dep. 36:19-20; Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 9, 2005, Doc. 33-2 pp. 73-74.)  Plaintiff also called Schwab a "liar." (*Id*.; Truhe Dep. 36:16-18.)

On May 9, 2005, Schwab sent Plaintiff two letters.  One letter concerned the argument they had engaged in earlier that day. (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 9, 2005, Doc. 33-2 pp. 73-74.)   In the letter, Schwab stated that he would not be yelled at by his subordinate and that Plaintiff's conduct was unprofessional and could subject him to discipline. (*Id*.) The second letter concerned Plaintiff's violation of the newly implemented policy requiring him to leave the police cruiser at the police station after his shift, and to not use it for his own personal use, "i.e., the commute at Township expense." (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 9, 2005, Doc. 33-2 p. 75.)

Shortly thereafter, on May 12, 2005, Schwab wrote Plaintiff another letter notifying him that another complaint had been lodged against Plaintiff concerning the newly implemented policies. (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 12, 2005, Doc. 33-2 p. 76.)  According to the

information Schwab had received, Plaintiff did not comply with the uniform policy requiring him to wear, during the summertime, "a short sleeve shirt with a black tie and police nameplate." (*Id.*)  In closing, Schwab asked that Plaintiff comply with this policy. (*Id.*)

The very next day, on May 13, 2005, Schwab wrote Plaintiff another letter informing Plaintiff that "[a] special meeting of the Township Board of Supervisors will be held on Wednesday, May 18, 2005 at 7:00 PM at the East Penn Township Social Hall to consider discipline action against you." (Def.'s SMF ¶¶ 7-8.)  Schwab listed a number of allegations and accusations made against Plaintiff, including, inter alia, conduct unbecoming an officer, insubordination, neglect of duty, and the disobedience of orders. (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 13, 2005, Doc. 33-2 pp. 77-79.)  Schwab also recited a litany of policy violations, including Plaintiff's use of the Township police cruiser for his personal commute, Plaintiff's failure to dress in the prescribed "summer uniform," and Plaintiff's failure to properly patrol the entire Township. (*Id.*)  Schwab closed the letter by stating that Plaintiff would be given "the full opportunity to address each charge" at the meeting. (*Id.*)  Plaintiff received this letter prior to the special meeting. (Def.'s SMF ¶¶ 9-10.)

On May 18, 2005, Plaintiff sent an email message to the Board of Supervisors, informing them that, "on advice of my attorney, I will not be attending [the special meeting]." (Email from Herb Truhe to East Penn Township Supervisors, dated May 18, 2005, Doc. 33-2 p.80.)

At the special meeting, the Board of Supervisors decided to suspend Plaintiff for a period of thirty (30) days, effective at midnight May 18, 2005. (Def.'s SMF ¶ 13.)  By way

of letter, dated May 20, 2005, Township Solicitor Jim Nanovic informed Plaintiff that he had been suspended. (Letter from James Nanovic, Township Solicitor, to Herb Truhe, Police Chief, dated May 20, 2005, Doc. 33-2 p.81.)  Nanovic stated in his letter that Plaintiff "[has] the right to make a written request for a public hearing and . . . the right to make a written answer to the charges.  If you make a request for a public hearing, the Board of Supervisors will hold such a hearing." (*Id*.)  Plaintiff did not request a public hearing and did not make a written answer to the charges. (Def.'s SMF ¶ 16.)  Plaintiff also did not appeal his suspension to the Court of Common Pleas of Carbon County. (Def.'s SMF ¶ 27.)

On May 27, 2005, Schwab wrote Plaintiff a letter informing him that "the Administrative Committee of the East Penn Township Board of Supervisors met in an executive session on May 25, 2005 to review your conduct, since the time of your suspension." (Letter from William G. Schwab, Police Liaison Supervisor, East Penn Township, to Herb Truhe, dated May 27, 2005, Doc. 33-2 pp. 84-85.)  Schwab stated that "[a]s a result of [this] meeting, the Board has determined that there is further conduct that may result in disciplinary action against you." (*Id.*)  Specifically, Schwab informed Plaintiff that he was charged with insubordination for failing to return all Township property during the period of his suspension, as required under the newly implemented policies. (*Id.*) Schwab continued:

> "As a result of your suspension, i[t] has also come to our knowledge that you have failed to keep a daily log since March 17, 2005 that is to be available for public review.  As a result of same, this may jeopardize the township, under the Right to Know Act.  Further, we have found that you failed to keep the mileage log from approximately March 3, 2005 to present.  As a result of the review of your time records, the

5

> police log, your reports, along with the traffic and non-traffic
> citations, we have found that there are gross discrepancies in
> the number of hours reflected, the time records, the number of
> incidences and the traffic and non-traffic citations. The
> committee considers this to violate Sub-section 4 of Section
> 600[, Neglect of Duty: Failure to comply with any reasonable
> order of the Board.] We further believe that the above under
> Section 500, Sub-section 1, [Insubordination: Refusal to obey
> a legal and reasonable order of a member of the Board,] is a
> second offense as well for insubordination which carries with it
> a fifteen (15) day suspension until dismissal."

(*Id.*) Schwab then stated that the Township Supervisors would hold another meeting, on June 6, 2005, "to consider further discipline action against you." (*Id.*) Schwab again closed the letter by informing Plaintiff that he would be given a full opportunity to address each charge, and could even request a public hearing. (*Id.*)

On June 1, 2005, Plaintiff's counsel wrote to Schwab informing him that he was "advising Chief Truhe not to attend the June 6th hearing." (Letter from Donald P. Russo to William G. Schwab, Esquire, dated June 1, 2005, Doc. 33-2 pp. 86-87.) Plaintiff's counsel also stated that he found it difficult to understand how additional charges could be raised against Plaintiff after he had already been suspended and out of work. (*Id.*) Plaintiff's counsel furthered that "[t]his appears to be a situation where a decision was initially made to terminate [Plaintiff], and then to suspend his pay, and then to seek a flimsy pretext to justify these actions on a *post hoc* basis." (*Id.*) Plaintiff's counsel also informed Schwab that a federal civil rights lawsuit would be filed in Scranton soon thereafter. (*Id.*)

At the June 6, 2005 meeting, the Board of Supervisors voted to terminate Plaintiff's employment as Chief of Police of the Township, effective immediately. (Def.'s SMF ¶¶ 22-23.) Nanovic informed Plaintiff of the Township's decision by letter dated June 9, 2005. (Letter from James Nanovic, Township Solicitor, to Herb Truhe, dated June

9, 2005, Doc. 33-2 pp. 88-89.)  In his letter, Nanovic informed Plaintiff of the reasons for his termination, which included insubordination, neglect of duty, and failure to maintain accurate logs, reports and time cards. (*Id.*)  Nanovic closed by stating that Plaintiff has "the right to make a written request for a public hearing and . . . a right to make a written answer to the charges.  If you make your request for a public hearing, [the] Board of Supervisors will hold such a public hearing." (*Id.*)  Plaintiff did not request such a public hearing and did not make a written answer to the charges. (Def.'s SMF ¶ 26.)  Plaintiff did not appeal his termination to the Court of Common Pleas of Carbon County. (Def.'s SMF ¶ 28.)

On June 21, 2005, Plaintiff filed a Complaint in this Court. (Doc. 1.)  This Complaint contained seven (7) counts.  In Counts I and II, Plaintiff alleged that he was deprived his Fourteenth Amendment right to due process under color of state law in violation of 42 U.S.C. § 1983. (Doc. 1 ¶¶ 44-70.)  In Count III, Plaintiff asserted a state law defamation claim. (Doc. 1 ¶¶ 71-78.)  Counts IV, V, VI and VII raised claims under the Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1 *et seq*., as well as the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (Doc. 1 ¶¶ 79-94.)  Counts IV through VII have been voluntarily withdrawn by Plaintiff. (Pl.'s Br. In Opp. 35, Doc. 30-1.)  As such, the Court will grant summary judgment in Defendants' favor as to Counts IV, V, VI and VII.  The remainder of this opinion will thus only address Counts I, II and III.

On October 16, 2006, Defendants filed the instant Motion for Summary Judgment (Doc. 19), which is fully briefed and now ripe for disposition.

### LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**A. Section 1983 Due Process Claim**

Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured. Here, Plaintiff alleges, in Counts I and II of his Complaint, that he has been deprived of his Fourteenth Amendment right to procedural due process under color of state law. In Count I, Plaintiff alleges that he was deprived of his property interest in continued employment without due process based on his "never [being] given a formal list of charges, notice or hearing regarding his suspension." (Doc. 1 ¶ 49.) Plaintiff also contends that he was not "given any opportunity to appeal his suspension." (Doc. 1 ¶ 51.) In Count II, Plaintiff alleges that he has been deprived a liberty interest in employment, arguing that his suspension and termination have imposed a stigma upon him, damaging his reputation and harming his ability to obtain employment. (Doc. 1 ¶¶ 57-70.)

"To state a claim under [section] 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

**1. Plaintiff's Property and Liberty Interests**

**a. Property Interest**

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). In Pennsylvania, the Police Tenure Act, 53 P.S. § 811 *et seq*. provides extensive procedural protections to Plaintiff, including the right to demand a public hearing and the right to appeal the results of a public hearing to the Pennsylvania Court of Common Pleas. 53 P.S. §§ 814, 815. As such, Plaintiff had a property interest in his continued employment as Chief of Police. *Viola v. Bensalem Twp.*, Civ. A. No. 84-3184, 1986 WL 2240, at *3 (E.D. Pa. Feb. 18, 1986).

**b. Liberty Interest**

"An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community . . ., for example, that he had been guilty of dishonesty, or immorality' or (2) 'imposes on him a stigma of other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 293-94 (3d Cir. 1984) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Id.* Thus, in the public employment context, "when an employer 'creates and disseminates a false and defamatory impression about the employee in

10

connection with his termination,' it deprives the employee of a protected liberty interest." *Hill*, 455 F.3d at 236 (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)).  Here, there is evidence of a "stigma-plus" injury.  Plaintiff has presented evidence that Defendants, by leveling a host of accusations against him and subsequently suspending and then terminating him, have imposed a stigma upon him preventing him from obtaining employment as a police officer.

### 2. What Process is Due?

Once it has been established that a substantive right has been affected, the Court must determine what process is due the plaintiff.  The Police Tenure Act provides adequate procedural safeguards for a full evidentiary hearing subsequent to suspension or termination. *See Kelly v. Warminster Twp. Bd. of Supervisors*, 404 A.2d 731 (Pa. Commw. Ct. 1979); 53 P.S. §§ 814, 815.  Indeed, section 815 of the Police Tenure Act entitled Plaintiff to appeal his suspension and subsequent termination to the Pennsylvania Court of Common Pleas.  These procedures have been held to provide adequate due process. *Kelly*, 404 A.2d at 733.  To be sure, the very process that is due, and the remedy provided to, an employee who has been deprived of his liberty interest, by having a stigma imposed upon him by his public employer, is merely a name-clearing hearing. *See Hill*, 455 F.3d at 236-239.  Plaintiff had the opportunity to appeal both his suspension and his termination to the Pennsylvania Court of Common Pleas and clear his name.  Plaintiff chose not to do so.  However, because section 815 provided Plaintiff with a post-deprivation right to appeal to the Pennsylvania courts, as a matter of law, he has no claim that he was denied his right to post-deprivation due process.

As for the property interest Plaintiff held in his continued employment, pre-deprivation notice and an initial opportunity to respond must have been afforded to Plaintiff in order to provide adequate due process.  Here, while Plaintiff alleges that Defendants never gave him a formal list of charges, notice or a hearing regarding his suspension, the Court concludes that, even viewing the summary judgment record in the light most favorable to Plaintiff, no reasonable jury could agree with Plaintiff.  Rather, the record is replete with letters notifying Plaintiff of the litany of charges made against him.  Many of these letters also informed Plaintiff that he had the right to demand a public hearing, would be afforded a full opportunity to address each charge, and to appeal any adverse action taken against him.  Indeed, Plaintiff was given advance written notice of the May 18, 2005 meeting, requested to attend so that he may be given a full opportunity to address each charge made against him, and given the choice of whether to make the meeting open to the public.  This is adequate pre-deprivation process.  The fact that Plaintiff chose not to avail himself of this process does not alter the Court's conclusion.  Plaintiff cannot merely decide not to use the procedure provided by state law and instead resort to a federal forum.  Consequently, the Court will grant Defendants' motion for summary judgment as to Plaintiff's procedural due process claims (Counts I and II).

**B. State Law Defamation Claim**

Whereas Plaintiff's now dismissed federal law claims were the bases for subject matter jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law defamation claim. 28 U.S.C. § 1367(c) (a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*,

383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Accordingly, the Court will dismiss Count III of Plaintiff's Complaint without prejudice.

## CONCLUSION

For the reasons stated above, the Court will: (1) grant Defendants' motion for summary judgment as to Counts I, II, IV, V, VI and VII of Plaintiff's Complaint; (2) deny Defendants' motion for summary judgment as to Count III of Plaintiff's Complaint; and (3) dismiss Count III of Plaintiff's Complaint without prejudice.

An appropriate Order will follow.


| January 19, 2007 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HERBERT TRUHE, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-1253 |
| v. | |
| | (JUDGE CAPUTO) |
| EAST PENN TOWNSHIP, et al., | |
| Defendants. | |

## ORDER

**NOW**, this ___19th___ day of January, 2007, **IT IS HEREBY ORDERED** that:

(1) Defendants East Penn Township, Board of Supervisors of East Penn Township, Guy Barry and Todd Deem's Motion for Summary Judgment (Doc. 19) as to Plaintiff Herbert Truhe's Complaint (Doc. 1) is **GRANTED** in part and **DENIED** in part:

    (A) Defendants' motion is **GRANTED** as to Counts I, II, IV, V, VI and VII of Plaintiff's Complaint;

    (B) Defendants' motion is **DENIED** as to Count III of Plaintiff's Complaint.

(2) Count III of Plaintiff's Complaint (Doc. 1) is **DISMISSED** without prejudice.

(3) The Clerk of the Court shall mark this case as **CLOSED**.

                                              /s/ A. Richard Caputo
                                              A. Richard Caputo
                                              United States District Judge